**LAW OFFICE OF KATHLEEN A. KENNE**
**KATHLEEN A. KENNE (California SBN 225841)**
2720 Neilson Way, #5141
Santa Monica, CA 90409-5141
Telephone (424) 204-6194
Facsimile: (310) 452-7067
lawofficekkenne@netzero.com

Attorney for Plaintiff, Terra L. Hands

# THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TERRA L. HANDS, | CASE NO. 2:14-CV-6514-ODW (cwx) |
| Plaintiff, | **FIRST AMENDED CIVIL COMPLAINT FOR DAMAGES FOR:** |
| vs. | |
| ADVANCED CRITICAL CARE-LOS ANGELES, INC.; and RICHARD MILLS, D.V.M.; RACHELLE SURRENCY; AMY GRAHAM, as corporate employees of ADVANCED CRITICAL CARE-LOS ANGELES, INC. and individually, | 1. **Family and Medical Leave Act ("FMLA"), and as amended in 2008 (29 USC § 2601 et seq.);** |
| Defendants. | 2. **Title VII, Pregnancy Disability Act ("PDA") (42 USC § 2000e et seq.);** |
| | 3. **American Disabilities Act (42 USC § 12116 and § 506 as re-designated under the ADA Amendments Act of 2008)("ADAAA");** |
| | 4. **California Family Rights Act ("CFRA") (Government Code §12945.2 et seq.);** |
| | 5. **California Pregnancy Leave Act ("PDL") (Government Code §12945);** |
| | 6. **California Fair Employment and Housing "FEHA" Anti-discrimination Provisions (Government Code § 12940 et seq.)** |
| | 7. **Intentional Infliction of Emotional Distress; and,** |
| | 8. **Negligence** |
| | **DEMAND FOR JURY TRIAL** |

**NOW COMES** Plaintiff **TERRA L. HANDS**, by and through her attorney, the Law Office of Kathleen A. Kenne, with her first amended complaint against defendants **ADVANCED CRITICAL CARE-LOS ANGELES, INC., RICHARD MILLS D.V.M.; RACHELLE SURRENCY AND AMY GRAHAM** as executive corporate employees of **ADVANCED CRITICAL CARE-LOS ANGELES, INC.** and individually, and hereby states as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under the following federal and state acts as follows:

   a. The Family and Medical Leave Act ("FMLA"), and as amended in 2008, commencing at 29 USC § 2601 et seq.;

   b. the Title VII, Pregnancy Disability Act ("PDA") commencing at 42 USC § 2000e et seq.;

   c. the American Disabilities Act commencing at 42 USC § 12116 and § 506 as re-designated under the ADA Amendments Act of 2008 ("ADAAA");

   d. the California Family Rights Act ("CFRA") commencing at Government Code §12945.2 et seq.;

   e. the California Pregnancy Leave Act ("PDL") commencing at Government Code §12945;

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

f. The California Fair Employment and Housing "FEHA" Anti-discrimination Provisions commencing at Government Code § 12940 et seq.;

g. Intentional Infliction of Emotional Distress; and,

h. Negligence.

2.    Each federal FMLA, PDA, ADAAA and corresponding state pregnancy, family and medical leave acts, and disability discrimination acts, including the CFRA, PDL, and FEHA, provided for employee job-related protection for both federal and state leaves for, inter alia, pregnancy-related disabilities, the birth or adoption of a child, the serious medical condition of an employee, child, or other eligible family member, and protection from discrimination because of pregnancy or other physical or mental disabilities.

3.    The state common law torts provide for recovery as a result of intentional or negligence tortious misconduct and damages caused by defendants.

4.    Each federal and state act provides for employee notice and written employer notice requirements, with varying *minimum* periods of leave, which may be combined, taken consecutively, and/or are based on the individual needs of each employee.

5.    The jurisdiction of this Court over the subject matter of this action is predicated on the following statutes:

a.  28 USC §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

b.  28 USC §1343 (3) and (4), which gives the district courts' jurisdiction over actions to secure civil rights extended by the United States government;

c.  28 USC §1367, which gives the district court supplemental jurisdiction over state law claims;

6.      Venue is appropriated in this judicial district under 28 USC §1391 (b) because the events that gave rise to this Complaint occurred in this district.

7.      All conditions precedent, if any, have occurred or been performed prior to the filing of this complaint.

**PARTIES**

8.      Plaintiff, TERRA L. HANDS ("Plaintiff" or "Ms. Hands") is an adult, over the age of eighteen, a citizen of the United States and resides in the City of Santa Monica, County of Los Angeles, State of California, which is in this judicial district.

9.      Defendant ADVANCED CRITICAL CARE-LOS ANGELES, INC. ("ACC") is a corporation incorporated under the laws of the State of California, licensed and having its principal place of business in the City of

Culver City, County of Los Angeles, State of California, which is in this judicial district.

10.   Defendant, RICHARD MILLS, D.V.M. ("Dr. Mills") is and was at all relevant times mentioned herein was the owner, chief of staff and executive corporate employee of ACC. Defendant RICHARD MILLS, D.V.M. is sued in his official capacity as owner, chief of staff, executive corporate employee of ACC, and individually.

11.   RACHELLE SURRENCY ("Ms. Surrency") was from March 1, 2012, and thereafter during all relevant periods of time mentioned herein, was the chief operating officer, business development and financial executive, and executive corporate employee of ACC. Defendant RACHELLE SURRENCY is sued in her official capacity as chief operating officer, business development and financial executive, executive corporate employee of ACC, and individually.

12.   AMY GRAHAM ("Ms. Graham") was at all relevant times mentioned herein the hospital administrator, administrative director and executive corporate employee of ACC.  Defendant AMY GRAHAM is sued in her official capacity as hospital administrator, administrative director, executive corporate employee of ACC, and individually.

13.   Defendants, (collectively "Defendants") and each of them individually were at all relevant times, in executive, managerial, or director

positions for the corporate defendant, ACC, and as such each of them were individually responsible for, to make decisions on behalf of the corporate defendant ACC, regarding the hiring, promoting, demoting, re-instating, or terminating of plaintiff, Ms. Hands.

14.   Defendants and each of them, and were and are at all times mentioned herein individually, residents of the State of California.

15.   Said Defendants are employers of more than 50 employees within the meaning of each of the foregoing acts.

16.   Plaintiff was a covered employee under the provisions of each act set forth herein.

17.   Plaintiff is informed and believes, and on the basis of such information and belief alleges, that at all relevant times, Defendants and each of them are, or have been a business entity organized as a California S corporation, an owner, employers, employees, actual and ostensive agents, and representatives of each other with respect to the conduct alleged herein and, in doing the acts alleged, were acting on behalf of the corporation, and within the course and scope, and under the apparent authority of such employment, agency, and representation and on behalf of the corporation.

## GENERAL ALLEGATIONS

18.   In February 2006 Ms. Hands was employed by ACC as a receptionist.

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

19.   In July 2007 Ms. Hands was hand-selected by defendant Amy Graham ("Ms. Graham") and was promoted to ACC's administrative assistant position.

20.   Ms. Hands' promotion also included being moved from the front reception area to the back administrative offices.

21.   In July 2007 Ms. Hands' administrative assistant position was third in the administrative hierarchy, with increased responsibilities including a variety of duties assisting Ms. Graham as ACC's Hospital Manager such as bookkeeping, accounting, banking, human resources, and cultural events.

22.   In or about early November of 2010 Ms. Hands informed ACC and Ms. Graham of her pregnancy with an anticipated due date of June 29, 2011 and her intention to continue working up to and until the time of delivery.

23.   On April 1, 2011, Ms. Hands unexpectedly went into premature labor, was admitted to the hospital on an emergency basis, and informed ACC and Ms. Graham, as her direct supervisor, of her unexpected labor and emergency hospitalization on that same day.

24.   On the early morning of April 2, 2011, Ms. Hands delivered a very premature daughter by emergency caesarian section who was hospitalized in the Neonatal Intensive Care Unit ("NICU").

25.   On or about April 6, 2011, ACC under the direction of Dr. Mills and Ms. Graham moved another ACC receptionist of three years, Christine

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

Barreda ("Ms. Barreda"), into Ms. Hands' administrative assistant position on an emergency temporary basis presumably until Ms. Hands' return from her emergency pregnancy, medical and family leave.

26.   During the first week of April 2011 Ms. Hands was released and then re-admitted to the hospital based on medical complications from her pregnancy, premature delivery, and her April 2, 2011 caesarian surgery.

27.   At no time on or after April 1, 2011, or to date, did defendants' ACC, Dr. Mills, Ms. Surrency or Ms. Graham provide Ms. Hands with any written notice as required by federal and state law for any of her emergency leaves taken from her employment at ACC taken under the FMLA, CFRA, PDL, or any other applicable federal or state disability, pregnancy, medical or family leaves.

28.   At no time on or after April 1, 2011, or to date, did defendants' ACC, Dr. Mills, Ms. Surrency or Ms. Graham provide Ms. Hands with *written* notice of any of her full rights and responsibilities, including her job protection rights, reinstatement rights, or the need to return to work within the *minimum* (not maximum) allowed periods of 12 weeks, 24 weeks, or 17 1/3 work weeks, or any combination thereof, under the FMLA, CFRA, PDL, or any other applicable federal or state disability, pregnancy, medical or family leaves.

29.   At no time on or after April 1, 2011, or to date, did defendants' ACC, Dr. Mills, Ms. Surrency or Ms. Graham provide Ms. Hands with any

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

*written* notice as required by federal and state law that her emergency hospitalization, premature labor, birth, child care, or serious medical condition of her premature infant daughter and corresponding employment or disability leaves were being credited against any minimum number of work week leave period(s); or that her leave was limited to only one leave period, or a certain number of maximum work weeks under either the FMLA, or CFRA, (12 work weeks each) and/or PDL (17 1/3 work weeks), or any combination thereof, or otherwise limited, under any other applicable federal or state disability, pregnancy, medical or family leave acts.

30.   From April of 2011 until November of 2011, Ms. Hands routinely informed ACC, Dr. Mills and Ms. Graham of her own medical status and that of her premature infant daughter who remained hospitalized the entire time.

31.   In September 2011 and again in December of 2011, Ms. Hands personally met with ACC employees and agents, and defendant Ms. Graham and was specifically informed and reassured that her employment with the ACC was secure, protected, and waiting for her return.

32.   From April 2, 2011 until her death on November 14, 2011 Ms. Hands' premature infant daughter remained in critical condition in the Neonatal Intensive Care Unit ("NICU") of several Los Angeles area children's hospitals.

33.   From before April 1, 2011 until January 16, 2012, Ms. Hands was under the care of a medical physician, related to her pregnancy, premature labor

and delivery, cesarean surgery and post-partum complications, as well as, emotional distress, grief, anxiety, depression and symptoms of post-traumatic stress disorder related to her critically ill and premature infant daughter's serious long-term hospitalization, complicated medical procedures, heart surgeries, and eventual death.

34.   From April 1, 2011 until January 16, 2012, Ms. Hands was also receiving temporary state disability benefits, under the California State Disability Insurance ("CASDI") and used all of her accrued sick and vacation time and pay from ACC.

35.   From April 1, 2011 until January 16, 2012 ACC also continued to pay all of Ms. Hands' insurance benefits, and billed Ms. Hands for her employee portion of those insurance benefits.

36.   At no time was Ms. Hands informed that her position was going to be eliminated, that she was going to be demoted, or that she was going to be terminated prior to, or after her return to ACC.

37.   On or about January 1, 2012 based upon Ms. Hands' reliance on defendants ACC's Dr. Mills and Ms. Graham's representations that her administrative assistant job was secure, available, and waiting for her return, Ms. Hands began making preparations to return to work in her administrative assistant position at ACC, which she had held since July 2007, but that was still being performed by Ms. Barreda since April 2011 on a temporary basis.

38.   In January 2012, Ms. Hands requested an early release from her medical physician to return to work at ACC, in her original administrative assistant position and was medically released by her medical physician to return to work in her administrative assistant position on January 16, 2012.

39.   On January 16, 2012 Ms. Hands returned to work at ACC, expecting to be fully restored to her prior administrative assistant position, and she requested reinstatement, but was never fully re-instated to her prior administrative assistant position at any time within 60 days of her return date with all of your former seniority, job duties, and responsibilities of the prior five years as guaranteed under both federal and state laws.

40.   In March of 2012, ACC and defendant Richard Mills, D.V.M. ("Dr. Mills") hired defendant Rachelle Surrency ("Ms. Surrency") as ACC's new Chief Operating Officer ("COO").

41.   On May 15, 2012, Ms. Hands became aware that ACC and Ms. Surrency intended to demote Ms. Hands into an inferior receptionist/receptionist supervisor position, while Ms. Barreda continued to work in her former Administrative Assistant position.

42.   From May 15, 2012 until June 1, 2012 Defendants' ACC, Dr. Mills, Ms. Surrency and Ms. Graham discriminated and retaliated against Ms. Hands for having taken pregnancy, family and medical leave for requesting reinstatement, by attempting to demote her into an inferior

receptionist/receptionist supervisor position, and by attempting to physically move her from her Administrative Assistant position and back administrative offices up to the front receptionist area under the false pretext of the *prospective* elimination of Ms. Hands' Administrative Assistant position.

43.   From May 15, 2012 until June 1, 2012 defendants ACC, Dr. Mills, Ms. Surrency and Ms. Graham, among others, also discriminated and retaliated and acted in direct violation of the FMLA, PDA, CFRA, and PDL, when they repeatedly attempted to harass, use undue influence, threaten, intimidate and coerce Ms. Hands into accepting the demotion for the inferior ACC position as receptionist/receptionist supervisor, by informing her that her former position was going to *prospectively* "eliminated" and would no longer be "funded", if she refuse to accept the demotion, which was untrue.

44.   At no time from May 15, 2012 to June 1, 2012 was Ms. Hands ever been provided with either a written job description or formal written offer by any defendant or ACC employee for the receptionist/receptionist supervisor position that included either a job description, duties, or terms.

45.   From May 15, 2012 to June 1, 2012 Ms. Hands repeatedly met with and/or orally declined the receptionist/receptionist supervisor position at ACC to Dr. Mills, Ms. Graham and Ms. Surrency and other ACC employees.

46.   From May 15, 2012 to June 1, 2012 Ms. Hands also repeatedly met with Dr. Mills, Ms. Graham and Ms. Surrency and orally continued to insist on

being fully reinstated into your former administrative assistant position at ACC still being performed by the ACC employee/receptionist, Ms. Barreda, at the time of her emergency pregnancy, disability, medical and family leave in April of 2011.

47. From May 15, 2012 to June 1, 2012, Dr. Mills, Ms. Surrency and Ms. Graham repeatedly denied Ms. Hands' multiple oral requests to be fully reinstated into your former administrative assistant position which was still occupied and being performed by the temporarily re-assigned receptionist, Ms. Barreda, who held less seniority than Ms. Hands.

48. For the first time late on the late afternoon of Friday, June 1, 2012 Ms. Hands was provided with an eight-page written job description for the intended demotion to the receptionist/receptionist supervisor position, with among other things, included a new 90-day probationary period.   The new job description terms, job duties, and responsibilities were inferior, condescending demeaning, belittling, and were not the same or very similar to Ms. Hands' Administrative Assistant position's duties, seniority, terms, or privileges which she held since July of 2007.

49. On Monday, June 4, 2012 after reviewing the entire eight-page written job description first provided on the late afternoon of Friday, June 1, 2012 Ms. Hands formally declined the demotion to the receptionist/receptionist supervisor position in writing; and, again insisted on being fully reinstated to her

position as administrative assistant or a very similar position in full compliance with the FMLA and CFRA also in writing.

50.   As the motivating factor for taking the foregoing disability, pregnancy, family and medical leave, insisting on her federal and state rights to full reinstatement, refusing to be demoted, and resisting defendants' harassment, undue influence, threats, intimidation and coercion to accept the demotion, defendants ACC, Dr. Mills, Ms. Surrency and Ms. Graham, gave Ms. Hands an ultimatum and informed Ms. Hands orally that if she did not accept the demotion, she would be terminated within the next 30 days under the false pretext of some *prospective* "elimination of her position" and/or *prospective* "lack of funding" for her position still occupied by the temporary ACC employee, Ms. Barreda.

51.   On the morning of June 6, 2012, after formally declining the demotion in writing Ms. Hands was wrongfully terminated from her employment at ACC by ACC, Dr. Mills, Ms. Surrency and Ms. Graham under the false pretexts orally and in writing that her administrative assistant position was prospectively "being eliminated" and/or "was no longer being funded" because she had refused to accept the demotion, and move to the front receptionist area.

52.   From June 2012 until September 2012, and after Defendants continued their ongoing pattern of unlawful employment practices against

plaintiff after her wrongful termination, by attempting to coerce a release in violation of public policies in exchange for "severance", opposing plaintiff's unemployment application, benefits, and appeals, making false and perjurious statements both in writing and under oath to EDD, and giving derogatory employment references about plaintiff to other potential employers.

53.    Defendants' since on or before April 9, 2007 have a pattern of the same or similar adverse, discriminatory, and retaliatory employment acts related to female employees who take pregnancy-related leave, by replacing them with non-pregnant employees, including a former ACC employee, "Angela Williams" who sued ACC in a similar state action related to her pregnancy and leave from ACC, and wrongful termination entitled *Angela Williams vs. Advanced Critical Care-Los Angeles, Inc.* Los Angeles Superior Court Case Number BC388178, filed on September 8, 2008 and disposed of by way of settlement.

54.    The foregoing conduct, including the creation and implementation of a company-wide policy that had the purpose and effect of repeatedly discriminating against employees with known and qualifying pregnancies, family and medical emergencies, seriously ill employees or family members and employees with disabilities, who took their eligible leaves, by failing to reinstate, attempting to demote, harassing, threatening, intimidating, coercing, retaliating, and ultimately terminating their employment, under a false pretext,

for asserting their rights related to their pregnancies, families, medical, or disability conditions is despicable conduct carried on over the course of many years in conscious disregard of the rights of the employees to be free from said misconduct, based on well-known and qualified conditions and the firmly-established public policies and acts of both the United States and the State of California prohibiting such misconduct, including discrimination, and retaliation in employment.   It thus constitutes an ongoing pattern of malicious and oppressive conduct over the course of many years.  A corporate policy that was created at the highest levels of corporate management and was fully authorized, adopted and ratified by all of the corporate owner(s), officers, executives, directors and managerial agents since on or before April of 2007.

## CLAIMS FOR RELIEF

### CLAIM ONE
### *VIOLATIONS OF FAMILY MEDICAL LEAVE ACT* ("FMLA")
### (29 USCS §2601 et seq.)

55.    Plaintiff incorporates by reference and restates each of the above paragraphs as if fully set forth herein.

56.    Plaintiff Ms. Hands had a medical and family emergency and on April 1, 2011, and thereafter, and based thereon took FMLA from ACC.

57.    At no time did defendants provide Ms. Hands of any written notice that her leave was being taken under, or credited against any federal or state leave acts, or limited time period, including FMLA.

58.     Plaintiff was subjected to adverse employment action in the forms of failure to reinstate, attempted demotion, harassment, coercion, and ultimately termination of her employment, and the decision to terminate her employment was based in whole or part on either or both purposeful discrimination and/or retaliation for taking FMLA leave, protesting and exerting her state and federal rights, including specifically rejecting a demotion and repeatedly requesting her reinstatement rights, said conduct subjected her, as a disabled employee and mother of a seriously ill child, to a disparate impact despite any pretext, or stated prospective motivation of "elimination and/or lack of funding" as prohibited by the FMLA policy of the United States.

59.     In engaging in the aforementioned conduct, Defendants and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the announced FMLA policy of the United States against such practices.

60.     As a direct and proximate result of the aforementioned acts and omissions of Defendants, plaintiff suffered general and compensatory damages, including but not limited to loss of income (past and future), loss of employment benefits (past and future), general and compensatory damages (past and future), and will continue to do so in the future, in an amount to be proven at trial.

61.     The foregoing conduct engaged in by Defendants ACC, and each of its individual directors, officers, and/or managing executive corporate

employees or agents, including RICHARD MILLS D.V.M., RACHELLE SURRENCY, and AMY GRAHAM constitutes malice, fraud, and oppression and was carried out with a conscious and willful disregard of their employee's rights to work in an environment in which personnel decisions were made without regard for the employee's disability status, so as to justify the imposition of punitive damages to punish and set an example of these said Defendants, both corporate and individually.

## CLAIM TWO
### *VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT THE PREGNANCY DISABILITY ACT ("PDA")*
**(42 USCS §2000e et seq.)**

62.     Plaintiff incorporates by reference and restates each of the above paragraphs as if fully set forth herein.

63.     Plaintiff Ms. Hands is a female, who was disabled from April 1, 2011, and thereafter, based on a qualifying emergency pregnancy-related medical condition and took emergency maternity leave that qualified under the PDA.

64.     At no time did defendants provide Ms. Hands of any written notice that her leave was being taken under, or credited against any federal or state leave acts, or limited time period, including PDA.

65.     Plaintiff was subjected to adverse employment action in the forms of failure to reinstate, attempted demotion, harassment, coercion, and ultimately termination of her employment, and the decision to terminate her employment

was based in whole or part on either or both purposeful discrimination and/or retaliation for being disabled as a result of a pregnancy, taking, protesting and exerting her state and federal rights, including specifically rejecting a demotion and repeatedly requesting her reinstatement rights, said conduct subjected her, as a disabled pregnant employee, to a disparate impact despite any pretext, or stated prospective motivation of "elimination and/or lack of funding" as prohibited by the PDA policy of the United States.

66.     In engaging in the aforementioned conduct, Defendants and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the announced PDA of the United States against such practices.

67.     As a direct and proximate result of the aforementioned acts and omissions of Defendants, plaintiff suffered general and compensatory damages, including but not limited to loss of income (past and future), loss of employment benefits (past and future), general and compensatory damages (past and future), and will continue to do so in the future, in an amount to be proven at trial.

68.     The foregoing conduct engaged in by Defendants ACC, and each of its individual directors, officers, and/or managing executive corporate employees or agents, including RICHARD MILLS D.V.M., RACHELLE SURRENCY, and AMY GRAHAM constitutes malice, fraud, and oppression and was carried out with a conscious and willful disregard of their employee's

rights to work in an environment in which personnel decisions were made without regard for the employee's disability status, so as to justify the imposition of punitive damages to punish and set an example of these said Defendants, both corporate and individually.

## CLAIM THREE
### THE AMERICAN DISABILITIES ACT AMENDMENT ACT OF 2008
### ("ADAAA")
### (42 USCS § 12001 et seq.)

69.     Plaintiff incorporates by reference and restates each of the above paragraphs as if fully set forth herein.

70.     Plaintiff Ms. Hands was disabled on April 1, 2011, and thereafter, due to a number of qualifying medical conditions, affecting one or more "major life events" under the ADAAA, and based thereon took extended disability leave from ACC.

71.     At no time did defendants provide Ms. Hands any offer of any other reasonable accommodations under ADAAA other than full extended disability leave from her administrative assistant position at ACC from April 1, 2011 to January 16, 2012.

72.     Plaintiff was subjected to adverse employment action in the forms of failure to reinstate, attempted demotion, harassment, coercion, and ultimately termination of her employment, and the decision to terminate her employment was based in whole or part on either or both purposeful discrimination and/or retaliation for being disabled under ADAAA, protesting and exerting her state

and federal rights, including specifically rejecting a demotion and repeatedly requesting her reinstatement rights, said conduct subjected her, as a disabled employee, to a disparate impact despite any pretext, or stated prospective motivation of  "elimination and/or lack of funding" as prohibited by the ADAAA policy of the United States.

73.    In engaging in the aforementioned conduct, Defendants and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the announced ADAAA policy of the United States against such practices.

74.    As a direct and proximate result of the aforementioned acts and omissions of Defendants, plaintiff suffered general and compensatory damages, including but not limited to loss of income (past and future), loss of employment benefits (past and future), general and compensatory damages (past and future), and will continue to do so in the future, in an amount to be proven at trial.

75.    The foregoing conduct engaged in by Defendants ACC, and each of its individual directors, officers, and/or managing executive corporate employees or agents, including RICHARD MILLS D.V.M., RACHELLE SURRENCY, and AMY GRAHAM constitutes malice, fraud, and oppression and was carried out with a conscious and willful disregard of their employee's rights to work in an environment in which personnel decisions were made without regard for the employee's disability status, so as to justify the

imposition of punitive damages to punish and set an example of these said Defendants, both corporate and individually.

## CLAIM FOUR
### *VIOLATIONS OF CALIFORNIA* FAMILY RIGHTS ACT ("CFRA")
### (Government Code §12945.2)

76.    Plaintiff incorporates by reference and restates each of the above paragraphs as if fully set forth herein.

77.    Plaintiff Ms. Hands had a qualifying medical and family incident on April 1, 2011, and thereafter, and based thereon took CFRA leave from ACC.

78.    At no time did defendants provide Ms. Hands with any written notice that her leave was being taken under or credited against any federal or state leave acts or limited time period, including CFRA leave, as required.

79.    Plaintiff was subjected to adverse employment action in the forms of failure to reinstate, attempted demotion, harassment, coercion, and ultimately termination of her employment, and the decision to terminate her employment was based in whole or part on either or both purposeful discrimination and/or retaliation for taking CFRA leave, protesting and exerting her state and federal rights, including rejecting a demotion and repeatedly requesting her reinstatement rights, said conduct subjected her, as a disabled employee, and mother of a seriously ill child, to a disparate impact despite any pretext, or stated

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

prospective motivation of "elimination and/or lack of funding" as prohibited by the CFRA laws of the State of California.

80.  In engaging in the aforementioned conduct, Defendants and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the announced CFRA policy of the State of California against such practices.

81.  As a direct and proximate result of the aforementioned acts and omissions of Defendants, plaintiff suffered general and compensatory damages, including but not limited to loss of income (past and future), loss of employment benefits (past and future), general and compensatory damages (past and future), and will continue to do so in the future, in an amount to be proven at trial.

82.  The foregoing conduct engaged in by Defendants ACC, and each of its individual directors, officers, and/or managing executive corporate employees or agents, including RICHARD MILLS D.V.M., RACHELLE SURRENCY, and AMY GRAHAM constitutes malice, fraud, and oppression and was carried out with a conscious and willful disregard of their employee's rights to work in an environment in which personnel decisions were made without regard for the employee's disability status, so as to justify the imposition of punitive damages to punish and set an example of these said Defendants, both corporate and individually.

////

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

## CLAIM FIVE
### VIOLATIONS OF CALIFORNIA PREGNANCY LEAVE ACT ("PDL")
### (Government Code §12945.2)

83.     Plaintiff incorporates by reference and restates each of the above paragraphs as if fully set forth herein.

84.     Plaintiff Ms. Hands is a female, who was disabled on April 1, 2011, and thereafter, due to a qualifying emergency pregnancy-related medical condition and took emergency maternity leave that qualified under the PDL.

85.     At no time did defendants provide Ms. Hands of any written notice that her leave was being taken under or credited against any federal or state leave acts, or limited time period, including PDL.

86.     Plaintiff was subjected to adverse employment action in the forms of failure to reinstate, attempted demotion, harassment, coercion, and ultimately termination of her employment, and the decision to terminate her employment was based in whole or part on either or both purposeful discrimination and/or retaliation for taking PDL, protesting and exerting her state and federal rights, including specifically rejecting a demotion and repeatedly requesting her reinstatement rights, said conduct subjected her, as a disabled pregnant employee, to a disparate impact despite any pretext, or stated prospective motivation of "elimination and/or lack of funding" as prohibited by the PDL laws of the State of California.

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

87.   In engaging in the aforementioned conduct, Defendants and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the announced PDL policy of the State of California against such practices.

88.   As a direct and proximate result of the aforementioned acts and omissions of Defendants, plaintiff suffered general and compensatory damages, including but not limited to loss of income (past and future), loss of employment benefits (past and future), general and compensatory damages (past and future), and will continue to do so in the future, in an amount to be proven at trial.

89.   The foregoing conduct engaged in by Defendants ACC, and each of its individual directors, officers, and/or managing executive corporate employees or agents, including RICHARD MILLS D.V.M., RACHELLE SURRENCY, and AMY GRAHAM constitutes malice, fraud, and oppression and was carried out with a conscious and willful disregard of their employee's rights to work in an environment in which personnel decisions were made without regard for the employee's disability status, so as to justify the imposition of punitive damages to punish and set an example of these said Defendants, both corporate and individually.

////

////

////

## CLAIM SIX
### VIOLATIONS OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ANTI-DISCRIMINATION ACT ("FEHA")
### (Government Code §12900 et seq.)

90.     Plaintiff incorporates by reference and restates each of the above paragraphs as if fully set forth herein.

91.     Plaintiff Ms. Hands was a pregnant and disabled covered employee, under the FEHA disability and pregnancy anti-discrimination provisions from April 1, 2011 until January 16, 2012.

92.     Plaintiff was subjected to adverse employment action in the forms of  failure to reinstate, attempted demotion, harassment, coercion, and ultimately termination of her employment, and the decision to terminate her employment was based in whole or part on either or both purposeful discrimination and/or retaliation for taking a number of available family, medical, pregnancy and disability leaves, including FMLA, CFRA, and PDL, protesting and exerting her state and federal rights, including specifically rejecting a demotion and repeatedly requesting her reinstatement rights, said conduct subjected her, as a disabled and pregnant employee, to a disparate impact despite any pretext, or stated prospective motivation of  "elimination and/or lack of funding"  as prohibited by the FEHA discriminatory laws of the State of California.

93.     In engaging in the aforementioned conduct, Defendants and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment

practices in violation of the announced FEHA policy of the State of California against such practices.

94.    As a direct and proximate result of the aforementioned acts and omissions of Defendants, plaintiff suffered general and compensatory damages, including but not limited to loss of income (past and future), loss of employment benefits (past and future), general and compensatory damages (past and future), and will continue to do so in the future, in an amount to be proven at trial.

95.    The foregoing conduct engaged in by Defendants ACC, and each of its individual directors, officers, and/or managing executive corporate employees or agents, including RICHARD MILLS D.V.M., RACHELLE SURRENCY, and AMY GRAHAM constitutes malice, fraud, and oppression and was carried out with a conscious and willful disregard of their employee's rights to work in an environment in which personnel decisions were made without regard for the employee's disability status, so as to justify the imposition of punitive damages to punish and set an example of these said Defendants, both corporate and individually.

### CLAIM SEVEN
### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

96.    Plaintiff incorporates by reference and restates each of the above paragraphs as if fully set forth herein.

97.    Plaintiff Ms. Hands alleges that the action taken by defendants from April 1, 2011 to date, as set forth herein above constitutes intentional,

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

extreme, and outrageous conduct which has been the actual and proximate cause of severe emotional distress suffered by plaintiff.

98.    As a direct and proximate result of the aforementioned acts and omissions of Defendants, plaintiff suffered general and compensatory damages, including but not limited to loss of income (past and future), loss of employment benefits (past and future), general and compensatory damages (past and future), and will continue to do so in the future, in an amount to be proven at trial.

99.    The foregoing conduct engaged in by Defendants ACC, and each of its individual directors, officers, and/or managing executive corporate employees or agents, including RICHARD MILLS D.V.M., RACHELLE SURRENCY, and AMY GRAHAM constitutes malice, fraud, and oppression and was carried out with a conscious and willful disregard of their employee's rights to work in an environment in which personnel decisions were made without regard for the employee's eligible pregnancy, family, medical or disability statuses or leaves, so as to justify the imposition of punitive damages to punish and set an example of these said Defendants, both corporate and individually.

## CLAIM EIGHT
### *NEGLIGENCE*

100.   Plaintiff incorporates by reference and restates each of the above paragraphs as if fully set forth herein.

101.   Defendants, and each of them in their relationship as employers of plaintiff, had a duty to act reasonable so as to obey all laws designed for the protection of plaintiff's rights as an employee.

102.   Defendants, and each of them breached said duties by the acts, errors, and/or omissions set forth hereinabove.

103.   As a direct and proximate result of the aforementioned acts and omissions of Defendants, plaintiff suffered general and compensatory damages, including but not limited to loss of income (past and future), loss of employment benefits (past and future), general and compensatory damages (past and future), and will continue to do so in the future, in an amount to be proven at trial.

104.   Plaintiff further alleges the right to attorney's fees under the applicable provisions of the United States acts, FMLA, Title VII, PDA, ADAAA; and/or the applicable provisions of the California acts, FEHA, CFRA, and PDL.

**PRAYER**

**WHEREFORE**, plaintiff TERRA L. HANDS prays for judgment against Defendant ADVANCED CRITICAL CARE-LOS ANGELES, INC.; and each of them, individually, Defendants RICHARD MILLS, D.V.M.; RACHELLE SURRENCY; and AMY GRAHAM *jointly and severally* as follows:

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

1. For General and Compensatory damages, including back pay, front pay, and value of the loss of employment benefits in the sum of no less than $250,000.00;

2. For Pre-Judgment Interest thereon at the prevailing rate;

3. For Punitive and Exemplary Damages in an amount necessary to punish Defendants and deter similar future misconduct;

4. For costs of suit, including Attorney Fees, Expert Witness Fees; and,

5. For such other further, legal and equitable relief as the Court may deem just, and proper to end the discriminatory practices and patterns of these Defendants, and to deter the same misconduct in the future.


DATED: October 14, 2014

_____
KATHLEEN A. KENNE

**LAW OFFICE OF KATHLEEN A. KENNE**
2720 Neilson Way, #5141
Santa Monica, CA 90409-5141
lawofficekkenne@netzero.com
Telephone (424) 204-6194
Facsimile: (310) 452-7067


**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38 (a) of the Federal Rules of Civil Procedure.

DATED: October 14, 2014

_____
KATHLEEN A. KENNE
Attorney for Plaintiff, Terra L. Hands

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California.  I am over 18 and not a party to the within action.  My business address is 2720 Neilson Way, #5141, Santa Monica, CA 90409-5141.  On October 14, 2014, I served the following document described as:

**FIRST AMENDED CIVIL COMPLAINT; AND DEMAND FOR JURY TRIAL**

on the interested parties by the following actions:

**WOOD, SMITH HENNING & BERMAN, LLP**
Stacy L. Douglas, Esq.
Shannon M. Benbow, Esq.
Danielle L. Pittsenbarger, Esq.
10960 Wilshire Boulevard, 18th Floor
Los Angeles, CA  90024-3804
Tel. 310-481-7600/Fax 310-481-7650
**Attorneys for Defendants, ADVANCED CRITICAL CARE-LOS ANGELES, INC.; RICHARD MILLS D.V.M.; AMY GRAHAM; AND RACHELLE SURRENCY.**

**By CM/ECF NOTICE OF ELECTRONIC FILING**:  I electronically filed the documents with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by court rules.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on October 14, 2014 at Santa Monica, California.

_____
Kathleen Kenne

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST AMENDED CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL**
**CV 14-06514-ODW-cwx**