O

# United States District Court
# Central District of California

| | |
|---|---|
| TERRA L. HANDS,<br><br>             Plaintiff,<br><br>     v.<br><br>ADVANCED CRITICAL CARE-LOS ANGELES, INC.; and RICHARD MILLS, D.V.M.; RACHELLE SURRENCY; AMY GRAHAM, individually and as corporate employees of ADVANCED CRITICAL CARE-LOS ANGELES, INC.,<br><br>             Defendants. | Case No. 2:14–cv–06514–ODW(CWx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [29]** |

## I.   INTRODUCTION

Plaintiff Terra L. Hands' First Amended Complaint ("FAC") brings eight causes of action against Defendant Advanced Critical Care-Los Angeles, Inc. and three of its corporate employees (collectively "ACC"). (ECF No. 26.) This action arises from ACC's alleged demotion and termination of Hands following her pregnancy and medical leave.  ACC filed a 12(b)(6) Motion to Dismiss on October 31, 2014. (ECF No. 29.)  Hands filed an Opposition on November 10, 2014 (ECF No. 31), and ACC filed a Reply on November 17, 2104 (ECF No. 33).  For the reasons

discussed below the Court **GRANTS IN PART** and **DENIES IN PART** ACC's Motion to Dismiss.[1]

## II.  FACTUAL BACKGROUND

Hands began working for ACC in 2006 in an administrative capacity. (FAC ¶ 18.)  In early November 2010, Hands notified ACC and her supervisor, Defendant Amy Graham, of her pregnancy and anticipated due date of June 29, 2011. (*Id.* ¶ 22.) Hands told ACC that she intended to continue working up and until her delivery. (*Id.*) On April 1, 2011, Hands unexpectedly went into premature labor and was immediately admitted to a hospital. (*Id.* ¶ 23.)  Hands notified ACC and Graham of her emergency hospitalization the same day. (*Id.*)  On April 2, 2011, Hands prematurely delivered her daughter, resulting in physical complications for both herself and her daughter. (*Id.* ¶¶ 24, 26.)  Hands' daughter remained in the Neonatal Intensive Care Unit ("NICU") for several months before passing away on November 14, 2011. (*Id.* ¶¶ 31–32.)  From April 2011 to January 2012, Hands was out of work and under the care of a physician as a result of her premature deliver, post-partum complications, and emotional distress. (*Id.* ¶ 33.)  During this time, Hands received temporary state disability benefits and used all of her accrued sick and vacation time from ACC. (*Id.* ¶ 34.)

On or about April 6, 2011, ACC temporarily moved another employee—Christine Barreda—into Hands' vacated position. (*Id.* ¶ 25.)  Hands routinely informed ACC of her medical status and was allegedly assured that she would not lose her position while she was away. (*Id.* ¶ 31.)  Hands alleges that she was never informed that her position would be eliminated, that she would be demoted, or that she would be terminated. (*Id.* ¶ 36.)  Hands also alleges that neither ACC nor any of its employees provided her with any written notice regarding emergency leave, disability leave, or job protection and reinstatement rights as required under California

---

[1] After carefully considering the papers filed related to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

and federal law.  (*Id.* ¶¶ 27–29.)

On or about January 1, 2012, Hands began making preparations to return to her position at ACC, which was still filled by Barreda.  (*Id.* ¶ 37.)  Hands returned to work at ACC on January 16, 2012, and she alleges that she was "never fully reinstated" to her prior position at any time within sixty days of her return.  (*Id.* ¶ 39.)  On May 15, 2012, Hands alleges that she learned that ACC intended to demote her while maintaining Barreda in Hands' previous position.  (*Id.* ¶ 41.)  Hands alleges that from May 15, 2012, to June 1, 2012, ACC and its employees discriminated and retaliated against Hands for taking medical leave and requesting a reinstatement by attempting to demote her to an inferior administrative position.  (*Id.* ¶ 42.)  Hands alleges that ACC informed her that her former position was eliminated, and then "attempted to harass, use undue influence, threaten, intimidate and coerce Ms. Hands into accepting the demotion[.]"  (*Id.* ¶ 43.)  Hands allegedly declined the demotion and repeatedly insisted a full reinstatement to her prior position.  (*Id.* ¶¶ 45–46.)

On June 1, 2012, Hands was allegedly provided a written job description for her demoted position, which included a ninety-day probationary period.  (*Id.* ¶ 48.)  Hands allegedly declined the demotion in writing on June 4, 2012.  (*Id.* ¶ 49.)  Claiming that her previous position was eliminated, ACC then allegedly gave Hands an oral ultimatum; if she did not accept the demotion she would be terminated within thirty days.  (*Id.* ¶ 50.)  Hands was allegedly fire on June 6, 2012.  (*Id.* ¶ 51.)  Hands alleges that ACC has a company policy that purposely discriminates against pregnant and ill employees who take leave.  (*Id.* ¶ 54.)

On November 25, 2012, Hands filed an administrative complaint with the California Department of Fair Employment and Housing ("DFEH") alleging discrimination and retaliation.  (ECF No. 30 ["RJN"], Ex. A.)[2]  The DFEH issued a

---

[2] Federal Rule of Evidence 201(b)(2) permits judicial notice of a fact that is "not subject to reasonable dispute in that it is  . . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  "In particular, a court may take judicial notice of its own records in other cases, as well as the records of an inferior

right to sue letter on September 25, 2013.  (RJN Ex. C.)  On December 27, 2012, Hands filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination under Title VII.  (RJN Ex. B.)  On May 21, 2013, the EEOC sent Hands a "Dismissal and Notice of Rights."  (RJN Ex. D.)

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleading in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court need not accept as true allegations contradicted by judicially noticeable facts, and the "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one of summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor is the Court required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks and citations omitted).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

---

court in other cases." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).  The Court takes judicial notice of the administrative court proceedings in ACC's Request for Judicial Notice.  (ECF No. 30.)

1  dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation
2  marks and citations omitted).
3       If the Court grants a motion to dismiss, it must determine whether to allow the
4  plaintiff leave to amend. Although leave to amend "shall be freely given when justice
5  so requires," Fed. R. Civ. P. 15(a), leave to amend may be denied if the moving party
6  has acted in bad faith, or if allowing amendment would unduly prejudice the opposing
7  party, cause undue delay, or be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512
8  F.3d 522, 532 (9th Cir. 2008). Amendment would be futile if "the pleading could not
9  possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122,
10 1130 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

## IV. DISCUSSION

Hands brings eight causes of action against ACC: (1) violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*; (2) a violation of Title VII's Pregnancy Disability Act ("PDA"), 42 U.S.C. §§ 2000e, *et seq.*; (3) a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12116; (4) a violation of the California Family Rights Act ("CFRA"), Cal. Govt. Code §§ 12945.2, *et seq.*; (5) a violation of the California Pregnancy Leave Act ("PDL"), Cal. Govt. Code § 12945; (6) a violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code §§ 12940, *et seq.*; (7) the intentional infliction of emotional distress ("IIED"); and (9) negligence. (*See* FAC.) ACC filed a 12(b)(6) Motion to Dismiss on October 31, 2014. (ECF No. 29.) The Court will discuss each argument raised in ACC's Motion.

### A. First Cause of Action—Violations of the FMLA

While not citing a specific provision of the FMLA, the FAC appears to further three alternative theories of liability under the FMLA. The first theory is ACC's failure to "provide Ms. Hands of any written notice that her leave was being taken under" the FMLA. (FAC ¶ 57.) The second theory is an interference claim based on ACC's failure to reinstate Hands. (*Id.* ¶ 58.) And the third theory is ACC's retaliation

against Hands for taking her FMLA leave or for not accepting a demotion. (*Id.*)

ACC's primary challenge to this cause of action does not relate to the prima facie elements, but rather the amount of time Hands was away from work. According to ACC, the FMLA only guarantees twelve weeks of leave a year, and because Hands was undisputedly on leave for forty-one weeks "ACC was under no obligation to reinstate plaintiff to her pre-leave position upon her return to work." (Def. Br. at 5–6.)

The FMLA guarantees an eligible employee twelve weeks of unpaid leave each year. *See* 29 U.S.C. § 2612(a)(1). Approved circumstances for such leave include "the birth of a son or daughter," the "care for the spouse, or a son, daughter, or parent of the employee, if such spouse, son, daughter, or parent has a serious health condition," and "a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* §§ 2612(a)(1)(A)–(D). "Upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002) (citing 29 U.S.C. § 2614(a)(1)).

There is no dispute that the FMLA protections only cover twelve weeks and Hands was absent from work for forty-one weeks. Hands does not argue that her right to reinstatement endures the twelve week minimum guarantee. Instead, she claims that (1) the guaranteed protection from *all* state and federal laws "total[s] 41 1/3 weeks of leave, or more," and (2) the "FAC does not allege that Ms. Hands took leave based solely on FMLA, or that she took more than 12 weeks of FMLA leave[.]" (Pl. Opp. at 7, 9.) Hands' first argument—the aggregating of state and federal laws—is misguided. Federal regulations provide that "[i]f leave qualifies for FMLA leave and leave under State law, the leave used counts against the employee's entitlement under both laws." 29 C.F.R. § 825.701(a). Hands cites no authority to the contrary. As discussed *infra*, the aggregated leave days under California law is still insufficient. The Court rejects her claim that she was entitled to "41 1/3 weeks of leave."

Her second argument—that her leave was not entirely FMLA leave and she did

not use all twelve weeks—is also invalid. Hands wants the Court to believe that the first thirty or so weeks of leave were non-FMLA leave days, and the remaining weeks—whether that be exactly or less than twelve—were under the FMLA. It is true that the FAC does not allege that any of the leave days were designated as FMLA leave. However, this theory runs afoul of Supreme Court guidance.

In *Ragsdale*, the high court rejected a federal regulation that stated that an employer's failure to designate leave as FMLA leave does not count against an employee's FMLA entitlement. *Ragsdale*, 535 U.S. at 88. The plaintiff in *Ragsdale* was out of work for thirty weeks of undesignated leave, and then demanded an additional twelve weeks of FMLA-designated leave under the regulation. *Id.* The *Ragsdale* Court found that this regulation "punishes an employer's failure to provide timely notice of the FMLA designation by denying it any credit for leave granted before the notice." *Id.* According to the Court, the "penalty is unconnected to any prejudice the employee might have suffered from the employer's lapse." *Id.* The Court concluded that the proper relief for a failure to designate/notice was under 29 U.S.C. § 2617, which requires proof that "the employee has been prejudiced by the violation." *Id.* at 89. The remedy under § 2617 "is tailored to the harm suffered." *Id.*

Hands theory of liability parallels the rejected regulation and theory in *Ragsdale*. The plaintiff in *Ragsdale* claimed that since her thirty weeks of leave was not designated as FMLA leave, then she was entitled to twelve more weeks of FMLA-designated leave. Hands claims that since none of her leave was designated as FMLA leave, then the last twelve weeks (or less) of a forty-one-week period are the FMLA-designated leave. Hands wants the Court to punish ACC by declaring the last twelve weeks of a forty-one-week period as FMLA leave days. The failure to notice an employee is not a punishment that warrants more leave than entitled, but instead a separate cause of action that requires prejudice. *See id*.

Accordingly, the Court finds that Hands' forty-one weeks of leave took her outside the statutory protections of the FMLA. Hands' can therefore not state a claim

for FMLA retaliation and interference. This approach is consistent with previous Ninth Circuit opinions. *See, e.g., Fiatoa v. Keala*, 191 Fed. Appx. 551, 553 (9th Cir. 2006) ("[The plaintiff] is not entitled to reinstatement because the leave lasted approximately twenty-eight weeks, which is significantly longer than the twelve weeks granted by FMLA."); *Hibbs v. Dept. of Human Resources*, 152 Fed. Appx. 648, 649 (9th Cir. 2005) ("The protections of the FMLA—entitling an employee to return to his job as if he had never left, with equivalent pay, benefits and other terms of employment—do not survive the expiration of the twelve-week period.").

Hands' theory of FMLA liability based on ACC's failure to notice (*see* FAC ¶ 57) fails because Hands does not allege that she was prejudiced by the lack of notice. *Ragsdale* requires a plaintiff to allege and show that she detrimentally relied and was prejudiced by an employer's improper notice. *See Ragsdale*, 535 U.S. at 89. The FAC merely alleges that ACC failed to provide notice, and this bald assertion is insufficient to state a claim under the FMLA. Accordingly, Hands' FMLA claim is dismissed.

**B.     Fourth and Fifth Causes of Action—Violation of CFRA and PDL**

Similar to the FMLA, California has two separate statutory provisions providing for unpaid leave. The CFRA provides a right to a maximum of twelve weeks of unpaid leave in a twelve-month period. Cal. Gov't Code § 12945.2(a). The PDL provides a right to "a female employee disabled by pregnancy, childbirth, or a related medical condition to take a leave for a reasonable period of time not to exceed four months and thereafter return to work[.]" *Id.* § 12945(a)(1). A California regulation—in a provision titled "Maximum Entitlement"—explains the interplay between the CFRA and the PDL: "The maximum statutory leave entitlement for California employees, provided they qualify for CFRA leave, for both pregnancy disability [under the PDL] and CFRA leave for reason of the birth of a child and/or the employee's own serious health condition is the working days in 29 1/3 workweeks." Cal. Code Regs. tit. 2 § 11046(d). The same regulation notes that to reach this

maximum period, the CFRA leave must follow the PDL leave. *Id.* (explaining that PDL leave would be used for pregnancy and CFRA leave used after delivery).

While the CFRA and PDL are separate and distinct from one another, the CFRA statute explicitly provides that CFRA leave and FMLA leave run concurrent. Cal. Gov't Code § 12945.2(s) ("The aggregate amount of leave taken under this section or the FMLA, or both, except for leave taken for disability on account of pregnancy, childbirth, or related medical conditions, shall not exceed 12 workweeks in a 12-month period."). If CFRA leave must follow PDL leave, *see* Cal. Code Regs. tit. 2 § 11046(d), and CFRA leave and FMLA leave must run concurrently, *see* Cal. Gov't Code § 12945.2(s), an employee cannot add FMLA leave to the maximum amount of leave allowed under California law. The longest possible leave period under the CFRA, PDL, and FMLA would be twenty-nine and one-third weeks.

Here, it is undisputed that Hands was out of work for forty-one weeks. She exceeded the reinstatement period by almost three months. Under California law, if CFRA leave is taken following PDL leave, then the right to reinstatement is governed by the CFRA. 2 C.C.R. § 11043(3). Similar to the FMLA, the "CFRA's reinstatement right only applies when an employee returns to work on or before the expiration of the 12-week protected leave[.]" *Rogers v. County of Los Angeles*, 130 Cal. Rptr. 350, 356 (Cal. Ct. App. 2011). Because Hands' leave period exceeded the PDL and CFRA periods, she has no right those statutory protections. Hands' reinstatement claims based on violations of the CFRA and PDL are dismissed.

Hands' FAC also raises a theory of liability under the CFRA and PDL based on ACC's failure to provide her notice of her leave rights. (FAC ¶¶ 78, 85.) Hands failed to identify any authority justifying her lack-of-notice cause of action, and the Court cannot find any support for this claim. The CFRA and PDL claims are dismissed.

**C.     Second Cause of Action—Violation of Title VII's PDA**

The FAC alleges that Hands was subject to an adverse employment action as a

result of "purposeful discrimination and/or retaliation for being disabled as a result of a pregnancy[.]" (FAC ¶ 65.) To state a prima facie case of pregnancy discrimination, a plaintiff must show that (1) she was pregnant; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated non-pregnant individuals were treated more favorably. *See Chuang v. Univ. of Calif. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir. 2000). While Hands was no longer pregnant at the time of the alleged adverse employment action, the PDA protects "women affected by pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e(k).

ACC challenges this claim on two grounds. First, ACC claims that the "FAC is devoid of factual allegations to demonstrate the termination decision was influenced by . . . her pregnancy[.]" (Def. Br. at 7.) The Court disagrees. When reading the FAC in the light most favorable to Hands, *see Manzarek*, 519 F.3d at 1031, the Court finds sufficient factual allegations that ACC subjected Hands to an adverse employment action because of her pregnancy. Hands specially alleges that she was demoted and terminated because she had a pregnancy. (FAC ¶ 65.)

Second, ACC claims that temporal proximity between Hands' pregnancy and the alleged adverse employment action is too long, as a matter of law, to state a claim under Title VII. (Def. Br. at 8.) As an initial matter, the Court notes that Hands does not allege that temporal proximity is the sole factual basis for a causal connection in this claim. Further, there is no legal principle anywhere that specifics the outer bounds of a temporal proximity. At this point in the litigation, ACC's arguments are rejected. Hands made a prima facie case under Title VII.

**D.     Third Cause of Action—Violation of the ADA**

Hands' third cause of action is a discrimination claim under the ADA. (FAC ¶ 72.) ACC's *only* challenge to this claim is identical to the challenge to the PDA claim—"Plaintiff's FAC is devoid of factual allegation to demonstrate that the termination decision was influenced by . . . her disability." (Def. Br. at 7.) Assuming,

without deciding, that Hands was a "qualified individual" under the ADA, *see* 42 U.S.C. § 1211(8), and noting the similarities between a prima facie case under the PDA and ADA, the Court rejects ACC's argument. The Court finds sufficient factual allegations that ACC subjected Hands to an adverse employment action because she was disabled. (*See* FAC ¶ 72.) Hands made a prima facie case for ADA discrimination.

### E.     Statute of Limitations for Title VII and ADA Causes of Action

ACC argues that the statute of limitations bars claims brought under Title VII and the ADA because the FAC was filed outside the statute of limitations period and the FAC does not relate back to the original Complaint. (Def. Br. at 10.) ACC argues: "[P]laintiff's initial Complaint contained no mention of disability or retaliation based on plaintiff's pregnancy such that moving defendants could have been put on notice that plaintiff would file a claim under Title VII [and the ADA]." (*Id.* at 12.)

The original Complaint fully details Hands' pregnancy and leave period, and the Title VII and ADA claims arise "out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). After reviewing the original Complaint, the Court summarily rejects this disingenuous argument.

### F.     Exhaustion of Federal Administrative Remedies

ACC claims that the Court lacks jurisdiction over Hands' ADA cause of action because Hands "checked" the Title VII box and not the ADA box on the EEOC cover sheet. (Def. Br. at 15; RJN Ex. B.)

"When an employee seeks judicial relief for incidents not listed in his original EEOC charge, a federal court may assume jurisdiction over the new claims if they are 'like or reasonably related to the allegations of the EEOC charge.'" *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984) (quoting *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973)). Hands' discrimination claims under Title VII's PDA and the ADA are nearly

1  identical, involve the same underlying facts, and use the same prima facie elements.
2  The ADA claim is reasonably related to the properly complained Title VII claim, and
3  therefore Hands properly exhausted her administrative remedies for the purposes of
4  this litigation. ACC's argument is rejected.

5  **G.  Individual Liability for Federal Claims**

6        The FAC is brought against Hands' corporate employer, Advanced Critical
7  Care-Los Angeles, as well as specific employees in their individual and official
8  capacities. (FAC ¶¶ 10–12.) ACC argues that Title VII and the ADA do not provide
9  a basis for individual liability. (Def. Br. at 15–16.) ACC is correct. *See Miller v.*
10 *Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (holding that individuals are
11 subject to suit under Title VII only in their official capacities under a theory of
12 respondeat superior); *Walsh v. Nev. Dept. of Human Res.*, 471 F.3d 1033, 1038 (9th
13 Cir. 2006) (holding that individual defendants cannot be held personally liable for
14 violations of the ADA). Hands cannot bring her Title VII and ADA claims against
15 ACC employees in their individual capacities. Because the FMLA cause of action is
16 dismissed, arguments regarding individual liability under the FMLA are moot.

17 **H.  Sixth Cause of Action—Violation of FEHA**

18       Hands' FEHA claim is based on ACC's alleged "purposeful discrimination
19 and/or retaliation" against Hands because she "was a pregnant and disabled covered
20 employee." (FAC ¶¶ 91–92.) ACC's *only* challenge to Hand's FEHA cause of action
21 is that "FEHA does not provide a basis for individual liability." (Def. Br. at 3.)

22       ACC is correct that the California Supreme Court foreclosed individual liability
23 for discrimination and retaliation claims under FEHA. *Reno v. Barid*, 957 P.2d 133,
24 1335 (Cal. 1998) ("The FEHA, however, prohibits only 'an employer' from engaging
25 in improper discrimination."); *Jones v. Lodge at Torrey Pines P'ship*, 177 P.3d 232,
26 243 (Cal. 2008) ("[W]e conclude that the employer is liable for retaliation under
27 [FEHA], but nonemployer individuals are not personally liable for their role in that
28 retaliation."). Hands' FEHA claim against ACC's employees, in their individual

capacities, is dismissed. The FEHA claim against ACC, a corporation, was not challenged and remains part of this case.

## I. State Law Statute of Limitations

ACC argues that all of the state law statutory claims are barred by the statute of limitations. (Def. Br. at 18.) Similar to ACC's federal statute of limitations argument, *see supra* Part IV.D, this state law argument claims that while the original Complaint was timely, the FAC fell outside the statutory period and does "not relate back" to the original Complaint. (*Id.* at 19.)

California's relate back doctrine is fundamentally the same as the federal rule. "[W]here an amendment is sought after the statute of limitations has run, the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the same general set of facts." *Austin v. Mass. Bonding & Ins. Co.*, 364 P.2d 681, 683 (Cal. 1961). Adopting the analysis from the Part IV.D, the Court finds that the FAC relies on the "same general set of facts" as the original Complaint and therefore rejects ACC's claim that the statute of limitations bars the California statutory claims. *See id.*[3]

## J. Seventh and Eighth Causes of Action—IIED and Negligence

Hands's final two causes of action are IIED and negligence. (FAC ¶¶ 96–104.) ACC claims that the statute of limitations precludes both claims. (Def. Br. at 21–22.)

California law sets a two-year statute of limitation for both IIED and negligence causes of action. *See* Cal. Civ. Proc. Code § 335.1. "[A] cause of accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury or some wrongful cause[.]" *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 917 (Cal. 2005). Hands' personal injury claims accrued when she was terminated on June 6, 2012. The original Complaint was filed on August 26, 2014 (ECF No. 3.), which is over two years from Hands' firing. The Court therefore dismisses Hands' claims for

---

[3] The Court summarily rejects ACC's contention that California's "sham pleading doctrine" warrants a dismissal of all state law claims. (Def. Br. at 17.) A California pleading doctrine is procedural and does not bind an Article III court.

IIED and negligence.

## V. CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant Advanced Critical Care-Los Angeles' Motion to Dismiss. (ECF No. 29.) The only remaining claims are against Defendant Advance Critical Case-Los Angeles, as a corporate entity, and the named employees in their official capacities for (1) Title VII, Pregnancy Disability Act, 42 U.S.C. § 2000e; (2) the American with Disabilities Act, 42 U.S.C. § 12116; and (3) California's Fair Employment and Housing Act, Cal. Gov't Code § 12940. All other claims and all defendants named in their individual capacities are matter are **DISMISSED**.

**IT IS SO ORDERED.**

January 7, 2015

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**